USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

AMERICAN CIVIL LIBERTIES UNION and
THE AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                        Plaintiffs,

                v.

DEPARTMENT OF DEFENSE, DEPARTMENT
OF JUSTICE, including its components the
OFFICE OF LEGAL COUNSEL and OFFICE OF
INFORMATION POLICY, DEPARTMENT OF
STATE, and CENTRAL INTELLIGENCE
AGENCY,

                        Defendants.

------------------------------------------------------------ X

: **OPINION AND ORDER**
: **GRANTING IN PART AND**
: **DENYING IN PART**
: **DEFENDANTS' MOTION FOR**
: **SUMMARY JUDGMENT**

: 15 Civ. 9317 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Following the release of the Senate's highly critical report on the CIA's use of

"enhanced interrogation techniques" on post-September 11 detainees, plaintiffs American Civil

Liberties Union and American Civil Liberties Union Foundation (together, the "ACLU") made a

demand under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents

referenced in the report. Defendants the Central Intelligence Agency ("CIA"), the Department of

Defense ("DOD") and the Department of Justice ("DOJ") (together, the "Government") released

most of the requested documents, but refused to release twenty-four documents. Of those,

nineteen remain in dispute.

        The Government now moves for summary judgment on these nineteen

documents, arguing that they are exempt from disclosure under FOIA's various statutory

exemptions. As I discuss below, I grant the Government's motion in part and deny it in part.

1

## BACKGROUND

### I.     The Senate Report

Beginning in 2009, the Senate Select Committee on Intelligence undertook what it later described as "the most comprehensive review ever conducted of the CIA's Detention and Interrogation Program," a program that began on September 17, 2001 and officially ended on January 22, 2009. SSCI Report, at 8–9.[1] The SSCI's lengthy review involved over six million pages of CIA materials. The SSCI's full report, *The Committee Study of the CIA's Detention and Interrogation Program*, was finalized in December 2012 and totals more than 6,700 pages. The full report remains classified, but was provided to President Obama and other Executive Branch personnel in early 2013. On December 9, 2014, following a declassification review, the SSCI publicly released a 525 page Executive Summary of the full report.

The SSCI Report concluded that the CIA's use of "enhanced interrogation techniques" was ineffective, illegal, and caused lasting damage to the United States' strategic and moral standing in the world. Among its conclusions, the SSCI found that: (i) the CIA's use of its enhanced interrogation techniques was not an effective means of acquiring intelligence or

---

[1] The origin of the Committee's interest in the CIA's program "had its roots in an investigation into the CIA's destruction of videotapes of CIA detainee interrogations," SSCI Report, at 1, a topic that came to light as a result of prior FOIA litigation before me brought by the ACLU. *See generally, Am. Civil Liberties Union v. Dep't of Def.*, 04-cv-4151 (S.D.N.Y. 2004). I ultimately declined to hold the CIA in contempt for its destruction of these tapes, but required the CIA to produce a range of materials relating to the CIA's conduct for the purpose of reconstructing the events depicted in the destroyed tapes. *See* Order Regulating Proceedings, Dkt. No. 305 (Aug. 20, 2008). The proceedings in this related case gave rise to numerous opinions and orders. *See, e.g., Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004); *Am. Civil Liberties Union v. Dep't of Def.*, 396 F. Supp. 2d 459 (S.D.N.Y. 2005); *Am. Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005); *Am. Civil Liberties Union v. Dep't of Def.*, 351 F. Supp. 2d 265 (S.D.N.Y. 2005); *Am. Civil Liberties Union v. Dep't of Def.*, 2006 WL 1638025 (S.D.N.Y. June 9, 2006), *aff'd*, 543 F.3d 59 (2d Cir. 2008), *cert. granted, judgment vacated*, 558 U.S. 1042 (2009); *Am. Civil Liberties Union v. Dep't of Def.*, 723 F. Supp. 2d 621 (S.D.N.Y. 2010), *aff'd in part, rev'd in part sub nom. Am. Civil Liberties Union v. Dep't of Justice*, 681 F.3d 61 (2d Cir. 2012); *Am. Civil Liberties Union v. Dep't of Def.*, 827 F. Supp. 2d 217 (S.D.N.Y. 2011); *Am. Civil Liberties Union v. Dep't of Def.*, 40 F. Supp. 3d 377 (S.D.N.Y. 2014), *vacated and remanded*, No. 15-1606 (2d Cir. Jan. 6, 2016); *Am. Civil Liberties Union v. Dep't of Def.*, 229 F. Supp. 3d 193, 211 (S.D.N.Y. 2017), *appeal docketed*, No. 17-779 (2d Cir. Mar. 20, 2017).

2

gaining cooperation from detainees; (ii) the interrogations of CIA detainees were brutal and far

worse than the CIA represented to policymakers and others; (iii) the CIA actively avoided or

impeded congressional oversight of the program; (iv) the CIA impeded effective White House

oversight and decisionmaking; (v) CIA detainees were subjected to coercive interrogation

techniques that had not been approved by the Department of Justice or had not been authorized

by CIA Headquarters; (vi) the CIA marginalized and ignored numerous internal critiques,

criticisms, and objections concerning the operation and management of the program; and that

(vii) the CIA's program damaged the United States' standing in the world and resulted in other

significant monetary and non-monetary costs.

## II. Procedural History

The SSCI Report referred to a number of documents that previously had not been

made available to the public, despite prior FOIA litigation brought by the ACLU seeking

documents related to the Government's treatment of detainees apprehended following September

11, 2011. On August 14, 2015, the ACLU submitted a FOIA request to the Central Intelligence

Agency, the Department of Defense, the State Department, and to the Department of Justice's

Office of Legal Counsel and Office of Information Policy. The request sought 69 records or

categories of records cited or referenced in the SSCI Report. On November 25, 2015, after

receiving no documents from the Government, the ACLU brought this action to compel the

Government to comply with the FOIA request.

In June and September 2016, the Government produced a number of the requested

documents. On October 14, 2016, the Government moved for summary judgment on twenty-

four documents. The Government argued that these documents, or portions thereof, were

properly withheld from production under FOIA's statutory exemptions. The parties refer to

3

these documents by the following numbers: 1, 2, 4, 6, 7, 8, 9, 10, 13, 14, 15, 17, 18, 19, 28, 29, 37, 43, 44, 45, 46, 50, 55 and 66.

Oral argument on the Government's motion was held on March 29, 2017. Argument began with a public hearing at which both parties presented their arguments. Immediately following this public hearing, I reviewed the documents *in camera*, with the Government alone attending. As I reviewed each document, I made preliminary rulings on the record with respect to all the documents in issue, except Documents 10 and 66 on which I reserved judgment. The following day, after being cleared by the Government, a transcript of the *in camera* session was provided to the ACLU.

Five documents are no longer in issue. In its opposition papers, the ACLU abandoned its request with respect to Documents 17 and 50 and, at oral argument, the ACLU abandoned its request with respect to Document 2. On June 14, 2017, the Government advised the Court that it had voluntarily produced an unredacted version of Document 9, following the Government's production of that same document in a civil action brought by former detainees in the Eastern District of Washington against James Mitchell and John Jessen, CIA contractors who played an integral role in designing the CIA's interrogation program. *See Salim v. Mitchell*, 183 F. Supp. 3d 1121 (E.D. Wash. 2016); *Salim v. Mitchell*, 2017 WL 3389011 (E.D. Wash. Aug. 7, 2017).[2]

By separate order issued on July 31, 2017, I granted summary judgment to the Government with respect to Document 1, a Memorandum of Notification issued by President George W. Bush on September 17, 2001, which authorized the CIA to capture and detain suspected terrorists. I upheld the Government's invocation of Exemption 1, which exempts

---

[2] The *Salim* case recently settled. *See* Sheri Fink, *Settlement Reached in C.I.A. Torture Case*, N.Y. TIMES, Aug. 18, 2017, at A12.

4

properly classified material, and Exemption 3, which exempts material that is specifically exempt from disclosure by statute. My oral ruling is reflected in the transcript attached as an appendix to the July 31 Order. *See* Order Granting Summary Judgment For Defendant With Respect to Document 1, Upholding Exemptions, Dkt. No. 76 (July 31, 2017).

## LEGAL FRAMEWORK

"FOIA was enacted in order to promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed. FOIA strongly favors a policy of disclosure, and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act. Consistent with FOIA's purposes, these statutory exemptions are narrowly construed. The Department bears the burden of demonstrating that any claimed exemption applies." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355–56 (2d Cir. 2005) (internal quotation marks and citations omitted).

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Jones-Edwards v. Appeal Bd. of Nat. Sec. Agency Cent. Sec. Agency*, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005). Summary judgment in favor of the Government is "appropriate where the agency affidavits 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.' Ultimately, an agency may invoke a FOIA exemption if its justification 'appears logical or plausible.'" *Am. Civil Liberties Union v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012) (quoting *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009)). However, "[t]o prevail in a FOIA case, agencies 'must supply the courts with sufficient information to

5

allow [the courts] to make a reasoned determination that they were correct' in withholding certain materials." *Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 291 (S.D.N.Y. 2012) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980)).

In this case, the Government has invoked Exemptions 1, 3, and 5. The ACLU has not challenged the Government's invocation of Exemptions 1 and 3 except with respect to Document 66.

## I. Exemption 5

Exemption 5 provides that FOIA "does not apply to matters that are ... inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). "Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5." *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (internal quotation marks and citation omitted). "The litigation posture of Exemption 5 cases ... focuses on the government proving the applicability of an exemption rather than the plaintiff proving applicability of one of the affirmative provisions because the burden rests on the government to shield documents from disclosure otherwise to be disclosed under FOIA." *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 195 n.7 (2d Cir. 2012).

The Government has invoked Exemption 5 to withhold or redact portions of all nineteen documents that remain in issue. The Government relies on two separate privileges: the attorney-client privilege and the deliberative process privilege.

### a. The Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). The purpose of the attorney-client privilege is "to encourage attorneys and their clients to communicate fully and frankly and thereby to promote 'broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Erie*, 473 F.3d at 419. "The party asserting the [attorney-client] privilege ... bears the burden of establishing its essential elements." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

The parties dispute whether the attorney-client privilege extends to confidential legal advice generally, or whether it is limited to situations in which the communication conveys or responds to the client's confidential information. The ACLU relies on decisions from the D.C. Circuit to argue that the attorney-client privilege applies only to the extent necessary "to protect the secrecy of the underlying facts." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 n.28 (D.C. Cir. 1977). Some courts in the D.C. Circuit have interpreted this footnote from *Mead* to conclude that the attorney-client privilege "does not protect an attorney's opinion or advice, but only 'the secrecy of the underlying facts' obtained from the client."

7

*Alexander v. F.B.I.*, 193 F.R.D. 1, 5 (D.D.C. 2000) (quoting *Mead*, 566 F.2d at 254 n.28). The Government argues that the Second Circuit has not embraced this "secret fact" limitation.

The parties overstate the difference between the D.C. and Second Circuit approaches. Although the Second Circuit has not used the limiting phrase "secrecy of the underlying facts," Second Circuit cases hold that the privilege does not attach unless the "communication relates to a fact of which the attorney was informed ... by his client ... without the presence of strangers." *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962) (citation omitted); *see also United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 206, 211 (S.D.N.Y. 1974) ("[T]he focus of the privilege must be on protecting confidential information revealed to the lawyer by the client."); *Nat'l Immigration Project of the Nat. Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 728 (S.D.N.Y. 2012) (the attorney-client privilege "attaches only where information 'was intended to be and was in fact kept confidential.'" (quoting *Erie*, 473 F.3d at 419)). Thus, even in the Second Circuit, legal advice divorced from confidential facts supplied by a client probably is not protected by the attorney-client privilege.[3]

Although "attorney-client privilege is narrowly construed and is limited to those situations in which its purposes will be served," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980), the fact that a communication involved a lawyer working for a government agency (as opposed to a private party) does not diminish the importance of the attorney-client privilege, for "[u]pholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business." *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005);

---

[3] We have not found a case on point. This is likely because lawyers seldom provide legal advice in a factual vacuum, or perhaps because such advice is given in connection with or in anticipation of litigation, and therefore is protected under the work product doctrine, obviating the need to rely on the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(3)(A).

*see also Erie*, 473 F.3d at 419 ("[P]ublic officials are duty-bound to understand and respect constitutional, judicial and statutory limitations on their authority; thus, their access to candid legal advice directly and significantly serves the public interest.").

That said, in the FOIA context, "[c]ertain limitations to the government attorney-client privilege ... may render an otherwise protectable communication unprotected." *Erie*, 473 F.3d at 418 n.5. In *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005), the Second Circuit explained that the "attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy." 411 F.3d at 360. In such circumstances, the "principal rationale behind the attorney-client privilege" – the promotion of "open communication between attorneys and their clients so that fully informed legal advice may be given" – "evaporates." This is because "once an agency adopts or incorporates [a] document, frank communication will not be inhibited." *Id.* Accordingly, "adopted documents are not protected by the attorney-client privilege." *Id.* Otherwise, "broad attorney-client privilege would permit legal opinions, recognized as authoritative interpretations within the agency, to be hidden from the public." *Id.* at 361 (quoting *Falcone v. IRS,* 479 F.Supp. 985, 990 (E.D. Mich. 1979)).

Lastly, the "attorney-client privilege protects only legal advice, not economic, business, or policy advice." *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 271 (S.D.N.Y. 2012); *see also Colton*, 306 F.2d at 638 ("Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever."); *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994) ("[T]he mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does

9

not mean that the communication is necessarily privileged."). This limitation on the scope of the attorney-client privilege applies not only to corporate in-house lawyers, but to government lawyers as well. In *Erie*, for example, the Second Circuit held, in the context of "civil suits between private litigants and government agencies," that courts must look to "whether the predominant purpose of the communication is to render or solicit *legal* advice," as opposed to business advice. 473 F.3d at 420 (emphasis added); *see also Fox News Network*, 911 F. Supp. 2d at 271 (distinguishing between legal and policy advice in the context of a FOIA dispute involving Treasury Department lawyers).

### b. The Deliberative Process Privilege

The deliberative process privilege is "a sub-species of work-product privilege that covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue*, 312 F.3d at 76 (internal quotation marks and citations omitted).

#### i. Purpose

The purpose of the privilege is to "promote the quality of agency decisions by preserving and encouraging candid discussion between officials." *La Raza*, 411 F.3d at 356. "Thus, underlying the deliberative process privilege is the rationale that 'those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.'" *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999) (quoting *United States v. Nixon,* 418 U.S. 683, 705 (1974)). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open

10

and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal quotation marks and citations omitted).

The privilege is "designed to safeguard and promote agency decisionmaking processes in at least three ways: '[I]t serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'" *Cuomo*, 166 F.3d at 481 (quoting *Coastal States,* 617 F.2d at 866).

### ii. Elements

"In order for a document to be protected by [the] deliberative process privilege, it must be: (1) an inter-agency or intra-agency document; (2) 'predecisional'; and (3) deliberative." *Tigue*, 312 F.3d at 76.

"A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* at 80 (internal quotation marks and citation omitted). A "document will be considered 'predecisional' if the agency can … (i) pinpoint the specific agency decision to which the document correlates ... and (ii) verify that the document precedes, in temporal sequence, the 'decision' to which it relates." *Cuomo*, 166 F.3d at 482 (quoting *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992)). "Protected by this privilege are recommendations, draft documents, proposals, suggestions, and

11

other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Tigue*, 312 F.3d at 80 (internal quotation marks omitted).

A document is 'deliberative' if it is "actually ... related to the process by which policies are formulated." *La Raza*, 411 F.3d at 356 (internal citation and quotation marks omitted). "[T]he document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

### iii. Scope

In determining whether a document qualifies for the deliberative process privilege, a court must consider "the function of the documents in issue in the context of the administrative process which generated them." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975). "[T]he privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Cuomo*, 166 F.3d at 482 (internal quotation marks and citation omitted). In evaluating whether a document is covered by the deliberative process privilege, courts should consider "whether the document (i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* (internal quotation marks and citation omitted).

Documents that were pre-decisional and deliberative at the time they were created may not be covered by the deliberative process privilege "if the agency has chosen 'expressly to

adopt or incorporate by reference [a]... memorandum previously covered by Exemption 5 in what would otherwise be a final opinion.'" *La Raza*, 411 F.3d at 356 (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 161 (1975)). In such a circumstance, "the document loses its predecisional and deliberative character, and accordingly, the deliberative process privilege no longer applies." *La Raza*, 411 F.3d at 356. Thus, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. In assessing whether a document has been adopted as policy, the Second Circuit has rejected a "bright-line test-whereby a document may be deemed expressly adopted or incorporated only in the event that an agency, in essence, uses specific, explicit language of adoption or incorporation." *La Raza*, 411 F.3d at 357 n.5. Instead, "courts must examine *all* the relevant facts and circumstances in determining whether express adoption or incorporation by reference has occurred." *Id.*

Similarly, a document is not covered by the deliberative process privilege "when the document is more properly characterized as an 'opinion[ ] [or] interpretation [ ] which embod[ies] the agency's effective law and policy,' in other words, its 'working law.'" *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d Cir. 2012) (quoting *Sears,* 421 U.S. at 153). "Therefore, the exemption 'properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *Brennan Ctr.*, 697 F.3d at 196 (quoting *Sears*, 421 U.S. at 153). Documents that have "operative effect" are not covered by the privilege because they are properly characterized as "final opinions." *Id.* at 197.

13

Lastly, the deliberative process privilege "does not, as a general matter, extend to purely factual material." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991); *see also Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("Purely factual material not reflecting the agency's deliberative process is not protected."). Thus, "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87–88 (1973). However, where factual information is intertwined with deliberative policy discussions, disclosure may not be possible without revealing the protected deliberations. Accordingly, a "determination of which if any portions of an otherwise exempt document are nonexempt must begin with a consideration of the nature of the document as a whole. Disclosure of 'purely factual material' in otherwise exempt documents may be ordered only if the material 'is severable without compromising the private remainder of the documents.' More is required than merely plucking factual segments from the reports[;] there must be a sensitive reference to the relation of the factual segments to the report as a whole." *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 85 (2d Cir. 1979) (quoting *Mink*, 410 U.S. at 91); *see also Tigue*, 312 F.3d at 82 (upholding withholding of factual material where it "is too intertwined with evaluative and policy discussions to require disclosure.").

In this case, the Court has undertaken its own review of each document to ensure that purely factual, segregable material is not being improperly withheld.

14

## DISCUSSION

The rulings I made during the *in camera* hearing, because they were intended for public dissemination, could not address the substance of each of the documents in issue. Because of the importance of the issues on which I had to rule, and the absence of adversarial argument on the application of the law of FOIA to these particular documents, I hesitated to express as final the rulings I made during the *in camera* hearing. Thus, since the release of the transcript of the *in camera* hearing, I have reviewed the documents and the parties' submissions several more times. The rulings below are the same as my preliminary rulings for most of the documents, but differ from my prior rulings with respect to Documents 7, 8, 10 and 15. My final rulings with respect to these four documents are discussed below.

### I.  Document 4

The Government describes this document as "email exchanges between CIA attorneys personnel (sic) regarding the POW status and questioning of detainees." Dkt. No. 67-1 ("Amended Vaughn Index") at 4. The Government argues that the redacted portions of Document 4 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 4, which consist of a CIA attorney's preliminary, pre-decisional legal analysis concerning the applicability of the Geneva Conventions in relation to the CIA's detention program, are exempt from disclosure under both the deliberative process privilege and the attorney-client privilege. The document clearly indicates that the lawyer is providing this analysis in the context of the development of policy and in response to information provided by the client. *See New York Times Co. v. U.S. Dep't of*

*Justice*, 756 F.3d 100, 121 (2d Cir. 2014) (affirming withholding under Exemption 5 of informal memoranda reflecting preliminary legal analysis).

## II. Document 6

The Government describes this document as "an email from a CIA attorney to Agency component personnel forwarding a draft letter to the Attorney General regarding the former detention and interrogation program." Amended Vaughn Index at 3. The unredacted portions of the document indicate that the draft letter included a request that the Attorney General grant a formal declination of prosecution, in advance, of CIA employees involved in the interrogation of detainee Abu Zubaydah. The Government argues that the redacted portions of Document 6 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 6 are exempt from disclosure under both privileges. A draft letter that is prepared by counsel and sent to the client for review is protected under the attorney-client privilege because it is part of the iterative process by which lawyers receive information from their clients, assess the information, and deliver legal advice to the client regarding the information. Disclosing the draft inevitably would disclose the confidential facts to which the advice relates. It is therefore protected by the attorney-client privilege. The redactions are also proper under the deliberative process privilege because the draft letter was part of the deliberations by which the CIA sought to resolve how and whether to seek a formal

16

declination of prosecution for employees involved in the interrogation of detainee Abu
Zubaydah.

### III.    Document 7

The Government describes this document, which is a cable entitled "Eyes Only –
Additional Operational and Security Considerations for the Next Phase of Abu Zubaydah
Interrogation," as "a communication between an Agency client and OGC attorney providing
information in connection with a request for legal advice." Amended Vaughn Index at 4. The
Government argues that the redacted portions of Document 7 are privileged under both the
attorney-client privilege and the deliberative process privilege and therefore exempt from
disclosure under Exemption 5.

The redacted portions of Document 7 are exempt from disclosure under the
deliberative process privilege, but not the attorney-client privilege. The Government argues that
the attorney-client privilege applies because the "communication was sent to CIA attorneys for
their legal review of the proposed course of action." Shiner Supp. Decl. ¶ 7. The cable,
however, which was authored by "agency employees in the field," is completely devoid of any
request for legal advice. The requested policy guidance was operational and logistical in nature,
not legal. CIA lawyers may have been included among the recipients of this cable, but that fact
alone does not make the document privileged, for "the mere fact that a communication is made
directly to an attorney, or an attorney is copied on a memorandum, does not mean that the
communication is necessarily privileged." *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F.
Supp. 156, 160 (E.D.N.Y. 1994).

The authors do, however, request "guidance from Headquarters employees
regarding the next phase of interrogation of Abu Zubaydah." Shiner Supp. Decl. ¶ 7. Thus,

17

although not covered by the attorney-client privilege, the redacted portions are properly withheld under the deliberative process privilege. *See New York Legal Assistance Grp., Inc. v. United States Dep't of Educ.*, 2017 WL 2973976, at \*6 (S.D.N.Y. July 12, 2017) (documents that "seek guidance in advance of deciding how to handle" a particular issue "are both predecisional and deliberative, and are properly withheld under the deliberative process privilege.").

Lastly, the ACLU surmises, based on unredacted portions of the document, that the Government is using the deliberative process privilege as cover to withhold decisions that were previously made, which by definition cannot be pre-decisional or deliberative. There is no basis for the ACLU's speculation.

## IV. Document 8

The Government describes this document, which is a cable entitled "Eyes Only – HQS Feedback on Issues Pending for Interrogation of Abu Zubaydah," as a cable "from Headquarters employees and lawyers to Agency employees in the field providing initial feedback on pending issues related to Abu Zubaydah's interrogation." Amended Vaughn Index at 5. The Government argues that the redacted portions of Document 8 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

None of the redacted portions of Document 8 is covered by the attorney-client privilege. There is no indication that this cable was sent in response to a request for legal advice, and, like Document 7, the guidance and deliberations contained in Document 8 are distinctly operational, not legal, in nature. The Amended Vaughn Index states that this "cable is from Headquarters employees and lawyers." Even accepting that a lawyer authored this cable, the contents of the cable indicates that the lawyer gave policy advice, which is not protected by the

18

attorney-client privilege. *Fox News Network*, 911 F. Supp. 2d at 271 (the "attorney-client privilege protects only legal advice, not economic, business, or policy advice.").

        With respect to the deliberative process privilege, I hold that some, but not all, of the redacted portions of Document 8 are exempt from disclosure. Much of the redacted material consists of the "give-and-take of the consultative process," *Brennan Ctr.*, 697 F.3d at 202 (citation omitted), by which the CIA resolved how to proceed with the interrogation of Abu Zubaydah. As the Government accurately states, the cable contains numerous requests for "additional information from employees in the field for the purpose of making a final decision on the interrogation." Shiner Supp. Decl. ¶ 8. Those portions thus "formed an essential link in a specified consultative process." *Cuomo*, 166 F.3d at 482.

        However, other redacted passages are not deliberative in nature, but instead provide directions to employees in the field. The Government characterizes these passages as "preliminary input in advance of a final decision from Headquarters as to how to conduct the next phase of Abu Zubaydah's interrogation." Shiner Supp. Decl. ¶ 8. However, this guidance was clearly intended to have "operative effect." *Brennan Ctr.*, 697 F.3d at 198. It may have been the case that further guidance was forthcoming. "'More guidance soon,' however, does not undercut the finality of the guidance already given." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 220 (D.D.C. 2012). Because these sections "embody the agency's effective law and policy," *Brennan Ctr.*, 697 F.3d at 196 (citation omitted), they are not exempt from production. Accordingly, the following portions of Document 8 are not covered by the deliberative process privilege and must be produced:

- The sentence appearing on lines 5-8 of the third paragraph on page 2;
- The entirety of Sections 4A and 4B on page 3;

19

- The first paragraph of Section 4E on page 4;

- The entirety of Section 4F on page 4;

- The sentence that begins with phrase "As has been…" that appears at the bottom of page 4.

### V. Document 10

The Government describes this document as "email exchanges from CIA attorneys to Agency component personnel providing legal guidance provided by DOJ attorneys." Amended Vaughn Index at 7. The Government argues that the redacted portions of Document 10 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

I initially reserved judgment on portions of Document 10 pending further consideration of the proper scope of the attorney-client privilege. Upon further review of both the document itself and the relevant case law, I now hold that none of the redactions made to the email appearing on the first page of the document are proper under either the attorney-client privilege or the deliberative process privilege.

An unredacted portion of this email states that "[Deputy Assistant Attorney General John] Yoo advised me that Attorney General John Ashcroft has approved the use of the water board in the interrogation of Abu Zubaydah." Since the Government concedes that the policy of waterboarding, and its approval by the Attorney General may be made public, there is no basis to withhold the balance of the email. The remainder of the email, authored by a CIA attorney, adds nothing new to the material already disclosed. It is public knowledge that the CIA adopted a policy of waterboarding detainees, including Abu Zubaydah. The SSCI Report, for example, contains sections entitled, "The CIA Obtains Legal and Policy Approval for Its

20

Enhanced Interrogation Techniques," and "The CIA Uses the Waterboard and Other Enhanced Interrogation Techniques Against Abu Zubaydah." *See* SSCI Report at 37-46; *id.* at 43-44 ("Waterboarding sessions 'resulted in immediate fluid intake and involuntary leg, chest and arm spasms' and 'hysterical pleas.' In at least one waterboarding session, Abu Zubaydah 'became completely unresponsive, with bubbles rising through his open, full mouth.'" (citations omitted)).

The attorney-client privilege, however, "may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy." *La Raza*, 411 F. 3d at 360. The "purpose of the privilege is not to protect communications which are statements of policy and interpretations adopted by the agency." *Id.* at 360–61 (citation omitted). Document 10 is a statement of policy. The Government may not withhold this email.

Nor is the document exempt from disclosure under the deliberative process privilege. The Government argues that Attorney General Ashcroft's legal approval was merely one piece of information that the CIA considered before deciding whether to waterboard Zubaydah. This argument fails because, as just noted, it is public knowledge that the CIA adopted a policy of waterboarding Zubaydah, and the "deliberative process privilege no longer applies" where the "agency has chosen expressly to adopt or incorporate by reference a memorandum previously covered by Exemption 5." *La Raza*, 411 F.3d at 356 (internal quotation marks and alterations omitted). Put another way, the email appearing on the first page of Document 10 is not pre-decisional; it is the decision itself. Consequently, it must be produced in full.

The second page of the document, however, which consists of a separate email, is protected by the attorney-client privilege because it is a request for legal advice concerning the

21

use of waterboarding on Abu Zubaydah, as reflected in the unredacted subject of the email, "Re: Abu Zubaydah – Need Written Confirmation from OLC." As a request for guidance on specific policy, it is also protected under the deliberative process privilege, and need not be produced.

## VI.    Document 13

The Government describes this document as "an email between Agency employees providing opinions and assessments of ongoing issues about, and recommending next steps for, detention and interrogation activities." Amended Vaughn Index at 8. The Government argues that the redacted portions of Document 13 are privileged under the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

With one exception, the redacted portions of Document 13 are exempt from disclosure under the deliberative process privilege because they consist of opinions and assessments concerning aspects of the CIA's detention and interrogation program. Disclosure of the first two paragraphs of the second email, however, would not reveal anything of substance. Those two paragraphs are not deliberative and can be segregated from that which is deliberative, and therefore must be disclosed, except for the names of personnel and locations, which are properly withheld under Exemption 1.

## VII.   Document 14

The Government describes this document as "an email between Agency component personnel providing opinions and assessments of ongoing issues about, and recommending next steps for, detention and interrogation activities." Amended Vaughn Index at

8. The Government argues that the redacted portions of Document 14 are privileged under the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 14 are exempt from disclosure under the deliberative process privilege because they reflect the author's assessment from the field regarding medical issues relating to ongoing interrogations, upon which policymakers rely in formulating policy. No factual material is segregable from that which is deliberative.

### VIII. Document 15

The Government describes this document, which is a cable entitled "Eyes Only – Statue (sic) of Interrogation Phase," as "a communication from an Agency employee in the field to Headquarters containing a summary of Abu Zubaydah's interrogation, an assessment of the situation and a recommendation based on that information." Amended Vaughn Index at 9. The Government argues that the redacted portions of Document 15 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

Some, but not all, of the redacted portions of Document 15 are exempt from disclosure under the deliberative process privilege. The portions that "recommend[] a plan of action" regarding the interrogation of Zubaydah and "request[] Headquarter's final decision with respect to that proposal," Shiner Supp. Decl. ¶ 13, are both pre-decisional and deliberative and therefore exempt. Other passages, however, consist entirely of "purely factual material" that is segregable from the deliberative passages, and therefore must be produced. *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991).

Nor are these purely factual passages covered by the attorney-client privilege. The Government argues that the attorney-client privilege applies "because the communication is

23

sent to CIA attorneys for their legal review of the proposed course of action," Shiner Supp. Decl. ¶ 13, and because the document "contains information exchanged in furtherance of requesting legal advice." Amended Vaughn Index at 9. But this document contains no requests for legal advice whatsoever. To the extent the Government contends this document contains an implicit request for legal advice, the "predominant purpose of the communication" was not "to render or solicit legal advice." *Erie*, 473 F.3d at 420. The purely factual material contained in the document is therefore not covered by the attorney-client privilege.

Accordingly, the following portion of Document 15 must be produced:

- The passage that begins at paragraph "A" on page 2 and ends at paragraph "3" on the bottom of page 4, with the exception of the sentence appearing in the middle of page 4 that begins with the word "Note."

## IX. Document 18

The Government describes this document, which is an email with the subject "Concerns Over Revised Interrogation Plan for Nashiri," as "an email from an Agency employee to a supervisor." Amended Vaughn Index at 10. The author of the email attaches a draft cable. The Government argues that the redacted portions of Document 18 are privileged under the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 18 are exempt from disclosure under the deliberative process privilege because they consist of pre-decisional policy recommendations regarding the "interrogation plan" of a detainee identified in the subject of the email as Nashiri. Although the author notes in an unredacted portion that he did not expect his draft cable "to go

24

anywhere," he made clear he wanted "it entered for the record," which reflects a desire to contribute to future deliberations regarding the policy at issue.

## X. Document 19

The Government describes this document as "an email containing a memorandum from one Agency employee to another discussing proposed internal training." Amended Vaughn Index at 11. The Government argues that the redacted portions of Document 19 are privileged under the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 19, which the Government has accurately described as "one employee's recommendation for future training and the development of a curriculum," Shiner Supp. Decl. ¶ 15, are exempt from disclosure under the deliberative process privilege. This material "reflect[s] the personal opinions of the writer rather than the policy of the agency," and "if released, [could] inaccurately reflect ... the views of the agency." *Cuomo*, 166 F.3d at 482. At the same time, the redacted portions clearly present policy recommendations regarding CIA interrogation policy. Accordingly, the redacted portions need not be produced.

## XI. Document 28

The Government describes this document as "a memorandum provided by the Office of Medical Services to the CIA Office of Inspector General containing comments on the OIG's 'Draft Special Review – Counterterrorism Detention and Interrogation Program.'" Amended Vaughn Index at 12. The Government argues that the redacted portions of this

document are privileged under the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 28 are exempt from disclosure under the deliberative process privilege because they consist of edits and comments provided by the CIA's Office of Medical Services ("OMS") on a draft of the CIA's Office of the Inspector General's "Special Review" of the detention and interrogation program. Comments and edits such as this, particularly to a draft document, are quintessentially deliberative, as they are steps in the formulation of policy. The ACLU posits that this document contains purely factual information that is not covered by the deliberative process privilege. Although Document 28 does include factual information, this information is "too intertwined with evaluative and policy discussions to require disclosure." *Tigue*, 312 F.3d at 82.

## XII. Document 29

The Government describes this document as "a communication from the CIA General Counsel to Agency clients providing legal guidance." Amended Vaughn Index at 13. The Government argues that the redacted portions of Document 29 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 29, which consist of pre-decisional legal advice regarding whether CIA detainees should be moved from Guantanamo Bay, Cuba in light of a pending Supreme Court case, are exempt from disclosure under both the deliberative process privilege and the attorney-client privilege.

## XIII. Document 37

The Government describes this document as "a memorandum for the record documenting a discussions (sic) between Department of Justice attorneys, OGC attorneys and Agency officials regarding specific interrogation techniques." Amended Vaughn Index at 14. The Government argues that the redacted portions of Document 37 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 37 are exempt from disclosure under both privileges. Document 37 is a memorandum documenting a meeting that consisted of requests for legal advice, information provided to counsel for the purpose of obtaining legal advice, and questions from counsel relating to the legal advice to be provided, all of which are protected by the attorney-client privilege. The redacted portions of Document 37 are also exempt under the deliberative process privilege because they reflect "discussions that preceded DOJ's final decision regarding its assessments as to the lawfulness of certain proposed techniques." Shiner Supp. Decl. ¶ 18.

The ACLU argues that this document contains descriptions of existing policy, which are not covered by the deliberative process privilege. *See Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (an agency may not "avail itself of Exemption 5 to shield existing policy from disclosure simply by describing the policy in a document that as a whole is predecisional, such as a memo written in contemplation of a change in that very policy."). Although the document does contain references to then-existing interrogation procedures, those references are inextricable from the "give and take of the deliberative process," and therefore need not be disclosed. *Id*; *see also Tigue*, 312 F.3d at 82

27

(upholding withholding of non-exempt material where it "is too intertwined with evaluative and policy discussions to require disclosure.").

### XIV. Document 43

The Government describes this document as "a communication from Agency clients to a CIA attorney providing comments and concerns on a draft DOJ legal opinion." Amended Vaughn Index at 15. The Government argues that the redacted portions of Document 43 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 43 are exempt from disclosure under both privileges. Like Document 28, the redacted portions consist of comments provided by OMS regarding a draft document, and therefore are both deliberative and pre-decisional. Here, that document is a draft DOJ legal opinion. Because the redacted portions consist of information provided to counsel in order to obtain legal advice, they are covered by the attorney-client privilege as well.

### XV. Documents 44, 45, and 46

The Government describes Documents 44 and 45 as "email exchanges between CIA attorneys and CIA Office of Public Affairs personnel providing legal advice on draft talking points related to the interrogation program," and Document 46 as "email exchanges between CIA attorneys and legal staff containing comments on OPA's draft press briefing." Amended Vaughn Index at 15-16. These email exchanges concern "whether and how to present certain information about the detention and interrogation program to the public." Shiner Supp. Decl. ¶ 20. The unredacted portions reflect the CIA attorneys' concern that public discussion of the program would jeopardize its secrecy. The Government argues that the redacted portions of Documents

44, 45 and 46 are privileged under both the attorney-client privilege and the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redactions portions of Documents 44, 45 and 46 are exempt from disclosure under both privileges. The ACLU contends, based on inferences drawn from unredacted portions of these documents, that the redacted portions consist not of legal advice, but of policy advice rendered by CIA attorneys regarding the CIA's public relations strategy. A careful review of these documents, however, confirms that the advice rendered in the redacted portions was legal in nature because it focused on the legal ramifications of disclosure, and not public relations or other reputational concerns. The redactions to these three documents are also proper under the deliberative process privilege because the redactions are of pre-decisional deliberations regarding the CIA's decision to publicly discuss the detention and interrogation program.

### XVI.   Document 55

The Government describes this document as "an email between Agency employees." Amended Vaughn Index at 17. The Government argues that the redacted portions of Document 55 are privileged under the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

The redacted portions of Document 55 are exempt from disclosure under the deliberative process privilege because they reflect interim discussions between James Mitchell, a CIA contractor, and George Tenet, the then-director of the CIA, regarding the use of enhanced interrogation methods. Shiner Supp. Decl. ¶ 21. The questions asked by Director Tenet, and the recommendations provided by Mitchell, are clearly part of the "give and take of the deliberative

process." *Pub. Citizen*, 598 F.3d at 876. No factual material is segregable from that which is deliberative.

### XVII. Document 66

Document 66 is a draft report entitled "Summary and Undated Reflections of Chief of Medical Services on OMS Participation in the RDI Program." Amended Vaughn Index at 18. Document 66, which is 89 pages long, consists of a detailed account of the CIA's detention and interrogation program from the perspective of the author. With the exception of one unredacted paragraph, the Government seeks to withhold the entire document under the deliberative process privilege. The Government also claims that "certain material" is exempt under Exemption 1 and 3 because that material "reflects intelligence sources and methods (dissemination/control markings, CIA intelligence activities, counterterrorism techniques, field installations)." *Id.*

I initially reserved judgment on Document 66. Upon further review of both the document itself and the relevant case law, I now hold that Document 66 is not covered by the deliberative process privilege. I further hold that the Government may not rely on Exemptions 1 and 3, which protect "properly classified" information from disclosure, to withhold information in Document 66 that the Government claims reflects "intelligence sources and methods," "CIA intelligence activities," or "counterterrorism techniques." The Government has failed to identify which portions of Document 66 reflect such information. The Government also has failed to satisfy its burden to show that the material in Document 66 that it claims was "properly classified" was, in fact, "properly classified." 5 U.S.C. § 552(b)(1).

### a. Exemption 5

The Government argues that Document 66 (i) "is pre-decisional and deliberative because it is a selective, draft account of one Agency officer's impressions of the detention and interrogation program," (ii) that "this document remained a working draft and was never finalized," and that (iii) "it is not the Agency's or OMS's final official history, or assessment, of the program." Shiner Supp. Decl. ¶ 22. These averments are insufficient to meet the Government's burden to show that Document 66 is covered by the deliberative process privilege.

The Government has provided scant context for this document. It is unclear based on the Government's submission why this document was created, whether it was circulated within OMS or the CIA, whether other CIA employees edited or provided comments on the document, and most importantly, whether decisionmakers relied on the document in connection with a policy decision. In short, we do not know anything about the document other than what is apparent from the document itself. Consequently, the Government has failed to show that the document "formed an essential link in a specified consultative process," *Cuomo*, 166 F.3d at 482, or that the document "was prepared to assist the agency in the formulation of some specific decision," *Tigue*, 312 F.3d at 80, or that it in any way "bear[s] on the formulation or exercise of policy-oriented judgment." *Cuomo*, 166 F.3d at 482 (internal quotation marks and citation omitted).

The Government points out that the document "does not appear on Agency letterhead" and emphasizes the "evaluative" qualities of the document. It is true that one consideration is whether the document "reflect[s] the personal opinions of the writer rather than the policy of the agency." *Id.* But a government employee's "impressions" of past events are not deliberative merely because they are unofficial or personal to the author, absent some non-

31

peripheral connection to an as-of-yet-made policy decision. *See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011) ("[A] draft is only privileged if it contains discussions that reflect the policy-making process. It is not privileged if it reflects the personal opinions of a writer with respect to how to explain an *existing* agency policy or decision."); *Fox News Network*, 911 F. Supp. 2d at 279 (requiring disclosure of document where "there is no indication that this recitation of past events relates in any way to a future policy decision."); *id.* at 278 (requiring disclosure of document where agency "failed to point to any later substantive policy decision that was furthered by this discussion, which simply rehearses past events.").

      The Government also argues that because the document is labeled as a draft, it is inherently deliberative and thus covered by the privilege. Many draft documents are indeed covered by the deliberative process privilege, as reflected in my rulings on Documents 6 and 18. But the mere fact that a document is labeled as a draft does not, standing alone, make it deliberative. Rather, a document is deliberative if is "actually ... related to the process by which policies are formulated," *La Raza*, 411 F.3d at 356 (internal citation and quotation marks omitted), and courts have rejected the notion that draft documents are automatically covered by the deliberative process privilege. In *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501 (S.D.N.Y. 2007), for example, the court explained that the "mere fact that a document is a draft ... is not a sufficient reason to automatically exempt it from disclosure," particularly where the agency's "descriptions do not include specific information about the draft documents such as their function and significance in the agency's decisionmaking process." 499 F. Supp. 2d at 515 (internal quotation marks and citations omitted); *see also Arthur Andersen & Co. v. I.R.S.*, 679 F.2d 254, 257–58 (D.C. Cir. 1982) ("Even if a document is a draft of what will become a final

document, the court must also ascertain whether the document is deliberative in nature.") (internal quotation marks and citation omitted).

The Government further relies on *Am. Civil Liberties Union v. United States Dep't of Justice*, 844 F.3d 126 (2d Cir. 2016), in which the Second Circuit upheld the Government's withholding of a document under Exemption 5 on the ground that "it is a draft and for that reason predecisional." 844 F.3d at 133. That decision, however, contained no substantive analysis of the deliberative process privilege. In fact, the word "deliberative" does not appear in the opinion. The decision also does not cite or discuss the numerous prior decisions of the Second Circuit which make clear that a document must be deliberative, in addition to being pre-decisional, in order to qualify for the privilege. *See, e.g.*, *Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("For this privilege to apply, an agency document must be (1) predecisional and (2) deliberative—that is, indicative of the agency's thought processes."); *La Raza*, 411 F.3d at 356 (identifying "deliberative" as one of the elements of the deliberative process privilege).

The Government also relies on a line of D.C. Circuit cases holding that drafts of official agency histories are covered by the deliberative process privilege. *See, e.g.*, *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014) (holding that "a *draft* of an agency's official history is pre-decisional and deliberative, and thus protected under the deliberative process privilege."). I decline to follow this line of cases for two reasons.

First, the Government has not shown that Document 66 is a draft of an "official agency history." To the contrary, the Government describes the document as a "selective, draft account of one Agency officer's impressions of the detention and interrogation program," and emphasizes that it "is not the Agency's ... final or official history, or assessment, of the

33

program." Shiner Supp. Decl. ¶ 22. As discussed above, the Government has provided no information from which I can infer that Document 66 has any connection to any official history of the CIA's detention and interrogation program, assuming such a history exists. In *Nat'l Sec. Archive*, the D.C. Circuit specifically noted the "narrow confines of this case, which involves a draft agency history." 752 F.3d at 465. Outside this narrow circumstance, however, the D.C. Circuit has made clear that "in most situations factual summaries prepared for informational purposes will not reveal deliberative processes and hence should be disclosed." *Paisley v. C.I.A.*, 712 F.2d 686, 699 (D.C. Cir. 1983); *see also Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 60 (D.D.C. 2014) ("Thus, notwithstanding its status as a 'draft,' a document that does not reflect the genuine evolution of an agency's decisionmaking process and instead merely recites factual information which does not bear on ... policy formation, is not entitled to protection under the deliberative process privilege." (internal quotation marks and citation omitted)).

Second, even if Document 66 was a draft of the CIA's official history of its interrogation and detention program, I find the D.C. Circuit's reasoning in *Nat'l Sec. Archive* unpersuasive. As Judge Rogers explains in her dissent in that case, the rationale for withholding draft histories under the deliberative process privilege is "because the agency's deliberative process would be revealed by means of 'a simple comparison between the pages sought and the final, published document,' which 'would reveal what material supplied by subordinates senior officials judged appropriate for the history and' what they did not." 752 F.3d at 466 (Rogers, J., *dissenting*) (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1538 (D.C. Cir. 1993)); *see also Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) ("[D]isclosure of editorial judgments ... would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work.").

34

Here, however, the Government concedes that this document was "never finalized," which means that there is no document against which to compare Document 66. The D.C. Circuit did observe that although "there may be no final agency document because a draft died on the vine," the "draft is still a draft and thus still pre-decisional and deliberative." *Nat'l Sec. Archive*, 752 F.3d at 463. But as Judge Roger's dissent illustrates, this holding is tautological. In situations such as this, where no final version of a draft document exists, shielding the draft from disclosure does not serve the purpose of the deliberative process privilege because the public cannot scrutinize the draft against its final version.

Finally, I recognize that in *Salim v. Mitchell*, No. CV-15-0286-JLQ (E.D. Wash. May 31, 2017), Judge Quackenbush, in the context of civil discovery, denied a motion to compel production of Document 66 (it appeared in that case as Document 46), holding that it was covered by the deliberative process privilege. Judge Quackenbush held that "the document contains the author's assessment and summary and is predecisional and deliberative." But Judge Quackenbush did not provide any support for this finding and, without any reasoning, the case is not persuasive. I decline to follow this decision.

In sum, the deliberative process privilege cannot serve as a basis to withhold any of the redacted portions of Document 66.

### b. Exemptions 1 and 3

The Government also seeks to withhold "certain material" in Document 66 under Exemptions 1 and 3. Exemption 1 provides that FOIA "does not apply to matters that are ... specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13526, dated December 29,

2009, sets out four requirements for the classification of national security information: (1) an "original classification authority" must have classified the information; (2) the information must be "owned by, produced by or for, or [be] under the control of the United States Government"; (3) the information must fall within one or more of the categories of information set out in Section 1.4 of Executive Order 13526; and (4) the original classification authority must have determined that "unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." The original classification authority also must be "able to identify or describe the damage." Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009).

Section 1.4 of Executive Order 13526, in turn, lists the following "categories of information": (a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; (e) scientific, technological, or economic matters relating to the national security; (f) United States Government programs for safeguarding nuclear materials or facilities; (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security; or (h) the development, production, or use of weapons of mass destruction.

The Government has also invoked Exemption 3 to withhold "certain material" that is classified under Executive Order 13526. Exemption 3 provides that FOIA "does not apply to matters that are ... specifically exempted from disclosure by statute (other than section 552b of this title), if that statute ... (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for

36

withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Applied here, the Government relies on the National Security Act, which requires the Director of

National Intelligence to "protect intelligence sources and methods from unauthorized

disclosure," including through the "classification of information under applicable law, Executive

orders, or other Presidential directives." 50 U.S.C. § 3024.

For two reasons, the Government has failed to satisfy its burden to show that

Exemptions 1 and 3 apply to information in Document 66 that reflects "intelligence sources and

methods," "CIA intelligence activities" or "counterterrorism techniques."[4]

First, the Government has not made clear which information in Document 66 it

seeks to withhold pursuant to Exemptions 1 and 3. For every document other than Document 66,

the Government provided an annotation specifying which FOIA exemption applied to which

material. For Document 66, by contrast, the Government has instead stamped each page of the

document with the phrase "Page Denied." As a result, it is impossible to know whether the

Government is relying on Exemptions 1 and 3 to withhold merely a few scattered phrases, the

entire document, or something in between. FOIA requires the Government to "supply the courts

with sufficient information to allow us to make a reasoned determination that they were correct."

*Coastal States*, 617 F.2d at 861. But if the Government does not make clear which information

it claims is exempt, it is impossible for the Court to assess whether the Government has

"demonstrate[d] that the information withheld logically falls within the claimed exemption."

---

[4] The ACLU has clarified that it does not seek disclosure of information concerning "foreign liaison services," "locations of covert CIA installations and former detention centers," classified code words and pseudonyms," or "classification and dissemination control markings." Accordingly, as I stated during the March 29 hearing, to the extent Document 66 reflects information that falls within these categories, such as the names of CIA personnel, locations of facilities, and agency code words, the Government's redaction of such material is proper.

*Wilner*, 592 F.3d at 73. The statute does not permit the Government to assert exemptions in such an opaque, imprecise manner.

Second, the Government has failed to satisfy the criteria set out in Executive Order 13526 because it has not shown that "unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," nor has it sufficiently "identif[ied] or describe[d] the damage." The Government states generally, and without specific reference to information contained in Document 66, that disclosure of intelligence methods and activities "could reasonably be expected to cause harm" because release of the information "could provide adversaries with valuable insight into CIA operations that would damage their effectiveness." Shiner Decl. ¶¶ 12, 17. Such conclusions without reasons are insufficient. The Government must justify its withholdings with "reasonable specificity" and "without resort to conclusory and generalized allegations of exemptions." *Halpern v. F.B.I.*, 181 F.3d 279, 290 (2d Cir. 1999) (internal quotation marks and citations omitted). It must also show that its justification for withholding is "logical or plausible." *Wilner*, 592 F.3d at 73.

In light of the extensive declassification of many aspects of the CIA's detention and interrogation program, the Government's sparse submission on this point suggests an effort to claim an exemption without hope of success. In *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100 (2d Cir. 2014), which concerned documents related to the legality of "targeted killings" of suspected terrorists, the Second Circuit held that the Government's reliance on Exemption 1 was neither logical nor plausible in light of public disclosures concerning the topic at issue. Consequently, disclosure of the "additional discussion" contained in redacted and withheld documents would "add[] nothing to the risk" of disclosing properly classified material. 756 F.3d at 120. Likewise here, the Government has made no effort – despite its decision to

bolster its initial submission with an Amended Vaughn Index and a supplemental declaration – to show that the redacted information in Document 66 was in fact "properly classified."

Accordingly, Exemptions 1 and 3 cannot serve as a basis to withhold Document 66, except to the extent the document reflects information concerning "foreign liaison services," "locations of covert CIA installations and former detention centers," classified code words and pseudonyms," or "classification and dissemination control markings." Beyond these specific categories of information, the Government must produce Document 66 in full.

## CONCLUSION

For these reasons, the Government's motion is granted in part and denied in part. The Government shall timely produce versions of Documents 8, 10, 13, 15, and 66 that comply with this Order. The Clerk shall terminate the motion (Dkt. No. 47), and mark the case closed.

SO ORDERED.

Dated:     September 27, 2017
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge